Mark J. Hyland (MH 5872)
Anne C. Patin (AP 6155)
Julia C. Spivack (JS 6054)

SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
(212) 574-1200 (telephone)
(212) 480-8421 (facsimile)

Attorneys for Plaintiffs



JUDGE PRESKA

'08 CIV 5023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
VIE LUXE INTERNATIONAL, LLC AND MARJORIE
GUBELMANN RAEIN,

                                        Plaintiffs,

                v.

DANIEL BENEDICT,

                                        Defendant.
------------------------------------------------------------

Plaintiffs Vie Luxe International, LLC ("Vie Luxe" or the "Company") and

Marjorie Gubelmann Raein ("Gubelmann" and together with Vie Luxe, "Plaintiffs") by their

attorneys Seward & Kissel LLP, for their complaint against Defendant Daniel Benedict

("Defendant" or "Benedict"), state as follows:

## NATURE OF ACTION

1.     Defendant Benedict's services and minority membership interest in Vie

Luxe, a luxury home fragrance company, were terminated for Cause effective April 10, 2008

following a prolonged period of Benedict's gross mismanagement that damaged the Company

and its majority owner, Gubelmann.  Benedict agreed to manage the Company's operations and

be bound by certain restrictive covenants in exchange for a membership interest and annual compensation. Over the course of over four years, Benedict grossly mismanaged the operations of the Company, causing it to consistently lose money year after year and to repeatedly require cash infusion by Gubelmann to remain a going concern. Benedict was advised repeatedly of his failures but continued notwithstanding to squander valuable Company assets, including the Vie Luxe brand and the client relationships developed over the years.

      2.     Since then, Benedict has violated his restrictive covenants by actively soliciting Vie Luxe clients for competing business. As part of his wrongful activities, Benedict stole Vie Luxe property, including files that were included on the Company's lap top computer that he tampered with, and has been using confidential and proprietary belonging to the Company information in furtherance of his solicitation of Vie Luxe clients and tortious interference with relationships they have with Vie Luxe. Notwithstanding that his employment and membership interest in Vie Luxe have been terminated and that he has and continues to breach his contractual and fiduciary duties, Benedict continues to claim that he still owns a membership interest in Vie Luxe.

      3.     Accordingly, this is an action for (a) damages for Benedict's breach of his non-solicitation and confidentiality agreements; (b) damages for Defendant's tortious interference with Vie Luxe's current and prospective business relations; (c) damages for Defendant's destruction of Vie Luxe property that was contained on the Company's computer in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (c) an order requiring the return of Vie Luxe property; (d) damages for Defendant's destruction of and failure to return Vie Luxe property; (e) damages resulting from Defendant's breach of his fiduciary duty to Gubelmann and Vie Luxe; and (f) a declaratory judgment confirming the termination of

Defendant's minority membership interest in Vie Luxe. Plaintiffs also seek affirmative injunctive relief requiring the return of all property wrongfully converted and preventing further breach of the restrictive covenants to which Benedict is bound that protect the legitimate business interests of the Company.

## THE PARTIES

4.      Plaintiff Vie Luxe International, LLC is a limited liability company organized under the laws of the State of New York, with a place of business at 38 East 57th Street, 14th Floor, New York, New York 10022.

5.      Plaintiff Marjorie Gubelmann Raein is an individual residing at 50 East 77th Street, New York, New York 10021. At all relevant times, Gubelmann was a member of Vie Luxe holding a majority interest therein.

6.      Defendant Daniel Benedict is an individual residing at 3 East 78th Street, New York, New York 10021. At all relevant times, Benedict was an at will employee and minority member of Vie Luxe until his services and membership interest were terminated on April 10, 2008.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper over this matter pursuant to 28 U.S.C. § 1331 because this matter arises under the laws of the United States.

8.      This Court may exercise supplemental jurisdiction over pendent state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy.

9.      Venue is proper under 28 U.S.C. § 1391(b) because both Plaintiffs and Defendant reside in this District.

## FACTS

10.     Vie Luxe is in the business of designing and wholesale selling specialty candles, home fragrance products and bath and beauty accessories.  It sells its products to high-end retailers, including major department stores, and also produces private lines for approximately one dozen designer label clients.

11.     Vie Luxe was formed in or about March 2004 by Gubelmann as the sole member of the Company.  To start the Company, Gubelmann made a capital contribution of $150,000 based on financial projections prepared and provided by Benedict.

12.     In or about May 2004, Gubelmann agreed to grant to Defendant a minority membership interest in the business and generous compensation, in exchange for services he would perform for the Company.  Defendant invested no capital in the business but rather agreed to provide his exclusive services in managing the operations of Vie Luxe.

13.     In consideration of Gubelmann's agreement to extend membership to Defendant, Gubelmann and Defendant entered into the Amended and Restated Operating Agreement of Vie Luxe International, LLC (the "First Operating Agreement") and a Membership Interest Acquisition Agreement (the "Membership Agreement"), both dated May 1, 2004.

14.     Under the Membership Agreement, Defendant agreed, *inter alia*, to provide services exclusively to Vie Luxe; to maintain the confidentiality of Vie Luxe's confidential and proprietary information and trade secrets, and information about Gubelmann and her family; and to refrain from soliciting Vie Luxe clients and prospective clients, and performing work or services for, any client or potential client, which business is similar or related to the business of the Company during and for a period of 18 months after his services for the company end for any reason.  Benedict also agreed that he would not solicit the employment

4

or services of, or hire or engage, any person who was an employee of the Company during the 12 months prior to his termination, and is prohibited from interfering with the business or accounts of the Company for 18 months following termination of his services.

15.    Defendant expressly agreed that the foregoing restrictions were fair and reasonable and would not prevent him from being employed or earning a livelihood in the type of business conducted by the Company following the termination of his services for the Company.

16.    Under the First Operating Agreement, Gubelmann agreed to grant Defendant a membership interest of 40%. In addition, Defendant would receive compensation of $129,000 per annum for his exclusive services. During the first year of Vie Luxe's operations, Gubelmann contributed an additional $370,000 above the initial capital contribution of $150,000 to start up the business. In 2005, Gubelmann invested another $35,000 in the Company to keep it afloat.

17.    Over the years, Vie Luxe acquired a significant number of clients, primarily based on Gubelmann's extensive personal contacts in the industry as well as through the resources and financial support Gubelmann provided to develop sales and clientele for the Company.

18.    Nevertheless, the Company struggled financially under Benedict's direction, and suffered a staggering net loss of approximately $186,831 in 2004 and approximately $178,239 in 2005, all while gross sales were steadily increasing.

19.    The Company was unsuccessful in its first two years because Benedict mismanaged operations, including but not limited to inventory production and order fulfillment. Gubelmann expressed her disappointment in Benedict, but he promised Gubelmann that he

5

would devote his best efforts to properly running the Company. Specifically, Benedict promised that he would handle the production management and inventory duties of an operations manager so that Vie Luxe would stay in a cash positive position and able to turn a profit in subsequent years. Under Benedict's mismanagement, by the end of 2005 the Company was on the verge of bankruptcy, needing a significant infusion of cash to keep it a going concern. In 2005, the Company obtained and used an entire $100,000 line of credit to pay its bills.

20.     Further, Gubelmann was at risk of losing her substantial investment in the Company. Benedict on the other hand had nothing to lose because he refused to make any capital contribution whatsoever to Vie Luxe.

21.     In reliance on Benedict's urging and insistence that he would run the Company profitably, in early 2006 Gubelmann agreed to contribute an additional $300,000 in operating capital to the Company, for a total of $705,000 since inception. Defendant again did not contribute any operating capital or other amounts. Instead, he agreed that his membership interest would be diluted to 10%. His compensation was modified for 2006, with Benedict taking a 12% reduction in salary but providing for a substantial increase if Defendant achieved certain objective financial goals. Defendant never met the performance standards that would have entitled him to an increase in his annual compensation, however.

22.     The parties recorded their agreement in the Second Amended and Restated Operating Agreement of Vie Luxe International, LLC dated June 9, 2006 (the "Second Operating Agreement").

23.     In addition to adjusting the membership percentages, Defendant was specifically tasked with product development and design; production and fulfillment management; sales, with a specific focus on department store sales; public relations and

marketing; management of the Company's participation in, and set up, of trade shows; and in-store training in marketing and sales of Company products.

24.    The Second Operating Agreement provided that Defendant's membership could be terminated for "Cause." "Cause" includes, *inter alia*, the Company's determination, acting solely through Gubelmann, that Defendant failed to perform adequately a material part of his duties or a breach by Defendant of his service, confidentiality and non-solicitation obligations under the Membership Agreement.

25.    Notwithstanding his agreement and his potential incentive increases to his compensation if the Company were profitable, Benedict continued to grossly mismanage Vie Luxe. Beginning in the end of 2006, Benedict was told repeatedly both verbally and in writing that his failure to perform the inventory and production management components of his duties were causing the Company to lose money.

26.    Benedict's numerous failures were unjustifiable and inexcusable for someone in his position. They include, without limitation, Defendant's failure to manage the ordering of inventory properly so that the Company could meet the holiday demand – by far the busiest season for sales of its products – despite having been advised of the need to plan for this critical season. Due to his gross mismanagement, year after year the Company failed to meet the holiday demand and lost sales. Defendant also failed to prepare an inventory projection to identify and prevent potential inventory imbalances, even after being requested to do just that.

27.    Accordingly, Defendant overstocked products that did not sell, and understocked those that did – an untenable business position that tied up critical operating capital for the already cash-strapped Company in "dead" inventory. Defendant was oblivious to this crisis. When asked, Defendant had no idea what inventory was on hand or why there were

hundreds of thousands of dollars of un-sellable inventory, including boxes for discontinued products, sitting in the Company's warehouse.

28.     Defendant was told that his mismanagement was harming the Company's ability to turn a profit numerous times. Defendant was on notice of his failures for at least two years prior to his termination from the Company on April 10, 2008.

29.     Further, on January 30, 2008, Defendant was expressly told that the inventory problems at the Company were his fault and were creating an unacceptable drag on the availability of cash, as follows:

> The main reason for Vie Luxe's cash problem is the inventory issue. This inventory problem has had a greater impact on the company than I think you realize. Essentially, the slow moving or un-sellable inventory is a drag on the company and has tied up much needed operating cash. . . cash that could have been used to turn sellable inventory into more cash, which would have bought more inventory. . . etc. Instead, we have approximately $150,000 invested in a "dead" asset and we have $100,000 borrowed on a line of credit that is in default.
>
> This inventory issue does fall on your shoulders. Although you have worked hard at the business and have made great strides you still must take responsibility for the inventory issue.

30.     By failing to heed the Company's numerous warnings about his failure to manage the inventory properly, Benedict's failure to perform his duties under the Second Operating Agreement constitutes a breach of his fiduciary duties to Gubelmann and the Company.

31.     After giving Defendant numerous chances to turn things around, he continued to drive Vie Luxe closer to bankruptcy once again. For example, the Company lost approximately $11,782 in 2006 and in excess of $90,000 in 2007.

32.     Accordingly, on March 26, 2008, the Company gave Benedict notice of his termination for Cause from the Company (the "Termination Notice") for his failure to

8

adequately perform the production and fulfillment management portion of his duties, with a fifteen (15) day period to cure, in accordance with Section 12 of the Second Operating Agreement.

33.    Over the course of the cure period, Benedict claimed that he had cured the inventory problems at the Company; however, the inventory problems that had persisted since the Company's inception, and was one of the primary reasons that Gubelmann could not earn a return on her investment. Accordingly, Benedict's membership interest was terminated effective April 10, 2008.

34.    Since the termination of his services, Gubelmann has discovered several other material failures on the part of Benedict that further form the basis of Cause, but could not have been known to Gubelmann because they were concealed by Benedict.

35.    Under the terms of the Second Operating Agreement, in the event that Benedict's services were terminated for Cause, his membership interest would terminate immediately and he would be entitled to the value of 50% of his 10% interest in the Company. On April 24, 2008, Vie Luxe notified Benedict that it had selected an appraiser to value his interest in the Company in accordance with the terms of the Second Operating Agreement.

36.    On April 28, 2008, Benedict rejected the appraiser selected by Vie Luxe without any basis. Instead, Benedict erroneously claimed that his membership interest was not terminated and that he continued to have rights in the Company. Defendant was obligated to cooperate with the Company in selecting a mutually agreeable appraiser, but has failed to do so.

37.    Additionally, Benedict has brazenly violated the restrictive covenants contained in the Membership Agreement. First, on information and belief, Defendant has taken numerous files containing important confidential client and business information and has refused

9

to return them, including numerous electronic files that have been deleted from the Company's laptop computer that Benedict used. Second, Defendant has solicited numerous Vie Luxe clients. Finally, upon information and belief, Benedict convinced the Company's sales representative, Michele Brown, to join Benedict in starting up a competing business. On information and belief, Benedict and Brown are wrongfully using Vie Luxe property and client contacts to start this competing business, which they expect to launch in about August 2008. Vie Luxe has suffered damages as a result of Benedict's numerous breaches.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

38.    Plaintiffs reallege paragraphs 1 through 37 as if set forth fully herein.

39.    Benedict agreed in the Membership Agreement to refrain from soliciting Vie Luxe clients and soliciting or hiring its employees, from using confidential Vie Luxe information and to return Company property. Despite his agreements, Benedict has breached these obligations and is attempting to harm Vie Luxe's business.

40.    As a direct and proximate cause of Defendant's breaches of his contractual obligations, Plaintiffs have suffered damages in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### (TORTIOUS INTERFERENCE WITH CURRENT
### AND PROSPECTIVE BUSINESS RELATIONS)

41.    Plaintiffs reallege paragraphs 1 through 40 as if set forth fully herein.

42.    Vie Luxe maintains current and prospective business relationships with numerous clients, including "private label" clients. These business relationships are the source of actual and potential revenues for Vie Luxe.

43.    Vie Luxe is able to attract and retain clients due to its reputation and quality of products. Vie Luxe has a reasonable expectation of continuing its business relationships with its current clients, and forming new relationships with prospective clients.

44.    Defendant is aware of Vie Luxe's current and prospective clients.

45.    Defendant wrongfully, intentionally, maliciously and with the intent to harm Vie Luxe's business solicited Vie Luxe clients, in violation of his non-solicitation agreement, to cause such clients and prospective clients to end their current and potential business relationship with Vie Luxe and commence a business relationship with Defendant.

46.    Defendant wrongfully, intentionally, maliciously and with the intent to harm Vie Luxe's business, on information and belief, made material misrepresentations to Vie Luxe current and potential clients to cause such clients and prospective clients to end their current and potential business relationship with Vie Luxe and commence a business relationship with Defendant.

47.    As a direct and proximate cause of Defendant's wrongful acts, Plaintiffs have suffered damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030)

48.    Plaintiff repeats and realleges paragraphs 1 through 47 as if set forth fully herein.

49.    In April 2008, Defendant unlawfully, knowingly and intentionally accessed Vie Luxe's computer without authorization or in excess of his authorization, and thereby obtained and destroyed Vie Luxe's valuable proprietary and confidential business information from such computer.

50.    Defendant obtained and destroyed Vie Luxe's property in furtherance of his violation of his contractual and fiduciary obligations not to solicit Vie Luxe's clients or interfere with its client relationships.

51.    Vie Luxe's computer constitute a "protected computer" under the Computer Fraud and Abuse Act, 18 U.S.C. §1030 because it is used in interstate commerce.

52.    As a direct result of Defendant's intentional, unauthorized access to and unlawful deletion of Vie Luxe valuable and proprietary and confidential information, Vie Luxe has incurred damages in an amount greater than $5,000.

## FOURTH CAUSE OF ACTION
### (REPLEVIN)

53.    Plaintiffs reallege paragraphs 1 through 52 as if set forth fully herein.

54.    Benedict agreed in the Membership Agreement to return Company property upon the termination of his membership therein.  Despite his agreement, Benedict has breached this obligation by refusing to return numerous paper and computer files to Vie Luxe and wrongfully continuing to retain Vie Luxe property.

55.    In fact, Benedict has intentionally deleted Company property from the lap top computer he used while employed at the Company.

56.    This information is the sole and exclusive property of Vie Luxe and is extremely valuable to the Company.

57.    Unless its property is returned to Vie Luxe, the Company will be subject to unfair competition by Benedict and will suffer financial harm. Accordingly, Plaintiffs are entitled to an order requiring the return of Company property.

## FIFTH CAUSE OF ACTION
### (CONVERSION)

58.    Plaintiffs reallege paragraphs 1 through 57 as if set forth fully herein.

12

59. Benedict has wrongfully taken paper and computer files belonging to Vie Luxe and has intentionally exercised unauthorized dominion and control of Vie Luxe property in defiance and to the exclusion of the Company's rights thereto.

60. In fact, Benedict also has intentionally deleted Company property from the lap top computer he used while employed at the Company.

61. Benedict also wrongfully utilized airline miles that belong to the Company. In or about February 2008, Benedict contacted American Express Rewards and directed that approximately 200,000 air "miles" that belonged to Vie Luxe be transferred to his personal air miles account. Benedict has failed to return such air miles and, upon information and belief, has used them making it impossible to return them in kind.

62. By reason of the foregoing, Plaintiffs have suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## (BREACH OF FIDUCIARY DUTY)

63. Plaintiffs reallege paragraphs 1 through 62 as if set forth fully herein.

64. During the course of his membership in the Company, Defendant owed a fiduciary duty to Vie Luxe and to Gubelmann to perform his duties in good faith and with the degree of care of an ordinarily prudent manager. *See* N.Y. L.L.C. Law § 409.

65. Defendant breached this fiduciary duty by failing to perform his duties in good faith and grossly mismanaging the operations of Vie Luxe, causing it economic and reputational harm, significantly devaluing its brand and damaging its good will.

66. Benedict was repeatedly put on notice of his wrongful conduct, but failed to correct it, instead continuing to allow the Company to slide into financial ruin while he continued to collect a paycheck.

67.    Due to Benedict's breaches, the Company's value as a going concern has been damaged significantly.

68.    In addition, Company paid Benedict approximately $480,000 during the approximately four years he was with Vie Luxe.

69.    Due to his breaches, Benedict must forfeit compensation he earned from the Company during the period he was in violation of his fiduciary duty.

70.    In the alternative, to the extent Defendant claims he continues to be a member in the Company, Defendant breached his fiduciary duty to the Company and Gubelmann by soliciting Vie Luxe clients and, upon information and belief, soliciting and/or hiring its employees, using confidential Vie Luxe information and failing to return Company property in violation of his express covenants in the Membership Agreement and his duty to act at all times in the best interests of Vie Luxe.

71.    As a result of Defendant's breaches, the Plaintiffs have suffered substantial damages, including but not limited to recovery of the value of the business absent Defendant's breaches, in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
## (DECLARATORY JUDGMENT)

72.    Plaintiffs reallege paragraphs 1 through 71 as if set forth fully herein.

73.    There is a justiciable controversy between the parties as to whether Benedict's membership interest in the Company has been terminated.

74.    This Court may declare the rights of the parties pursuant to 28 U.S.C. § 2201.

14

75.    On March 26, 2008 Vie Luxe issued Benedict the Termination Notice which became effective fifteen (15) days later on April 10, 2008. Accordingly, Benedict's membership interest terminated on April 10, 2008.

76.    By letters dated April 14, 2008 and April 28, 2008, Benedict erroneously claims that he continues to be a member in the Company notwithstanding the Termination Notice.

77.    Vie Luxe is entitled to a declaratory judgment that Benedict's membership in the Company ended on April 10, 2008.

78.    First, Benedict's services were terminated for Cause for failure to adequately perform a material part of his duties to the Company, in accordance with the Second Operating Agreement.

79.    Alternatively, even if the Company did not have Cause to terminate Benedict's services – and it did – Benedict's membership in the Company could be terminated by Gubelmann at any time because she held a 90% majority interest in the Company. *See* N.Y. L.L.C. Law § 414.

80.    Additionally, if Benedict were still a member in the Company as he claims, his violation of his obligations under Sections 3.01, 3.02, 3.03, 3.04 and 4.01 of the Membership Agreement for soliciting Vie Luxe clients, failure to return and destruction of Vie Luxe property, soliciting and/or hiring Vie Luxe employees, use of confidential Vie Luxe information and violation of his exclusive service obligations are separate and distinct grounds for immediate termination of Benedict's interest in the Company.

## EIGHTH CLAIM FOR RELIEF
### (INJUNCTION)

81.    Plaintiffs reallege paragraphs 1 through 80 as if set forth fully herein.

82.     On information and belief, Benedict continues to retain wrongfully Vie Luxe's valuable propriety and confidential business information, to the Company's detriment. Benedict has used this information for the purposes of violating his non-solicitation agreement and providing services of the kind that Vie Luxe provides to its clients and potential clients.

83.     Benedict also continues to violate his non-solicitation and confidentiality agreement.

84.     Money damages would not be an adequate remedy to fully compensate Plaintiffs for the incalculable loss of its confidential business information and the damage to the Company's good will and Plaintiffs' reputation.

85.     Plaintiffs have no adequate remedy at law.

86.     Plaintiffs are likely to succeed on the merits of their claim on account of Benedict's blatant breaches of his contractual obligations.

87.     Pursuant to Section 3.05 of the Membership Agreement, Defendant acknowledged and agreed that Plaintiff shall be entitled to injunctive relief, without the necessity of proving the inadequacy of money damages, enjoining and restraining him from violating his confidentiality, return of property and non-solicitation obligations.

88.     By reason of the foregoing, Plaintiffs are entitled to preliminary and permanent injunctive relief.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment as follows: (a) on its First Cause of Action an award of damages to be determined at trial; (b) on its Second Cause of Action an award of damages to be determined at trial; (c) on its Third Cause of Action, an award of damages to be determined at trial; (d) on its Fourth Cause of Action, an order requiring Benedict to return all Company property; (e) on its Fifth Cause of Action, an award of damages to be determined at trial; (f) on its Sixth Cause of Action an award of damages in an amount to be determined at trial; (g) on its Seventh Cause of Action, a declaratory judgment confirming that Benedict's membership interest in the Company ceased effective April 10, 2008; (h) on its Eighth Cause of Action, an injunction requiring Benedict to return all Company property and to restrain him from further violating his restrictive covenants with the Company; (i) awarding Plaintiffs its attorneys fees, costs and expenses; and (i) granting such other, further and different relief as the Court determines is just and proper.

New York, New York
May 30, 2008

SEWARD & KISSEL LLP

By: _____
Mark J. Hyland (MH 5872)
Anne C. Patin (AP 6155)
Julia C. Spivack (JS 6054)

One Battery Park Plaza
New York, New York  10004
(212) 574-1200

Attorneys for Plaintiffs
Vie Luxe International, LLC and
Marjorie Gubelmann Raein

SK 26271 0001 887535

17