UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X

VIE LUXE INTERNATIONAL, LLC AND MARJORIE
GUBELMANN RAEIN,                                    :

                                        :   08 Civ. 5023 (LAP)(GWG)

                            Plaintiffs,       :

                                          :

                v.                              :

DANIEL BENEDICT, DANIEL BENEDICT DESIGN, INC.,      :
AND MICHELE BROWN                                   :

                                :

                          Defendants.       :

------------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Mark J. Hyland (MH 5872)
Anne C. Patin (AP 6155)
Julia C. Spivack (JS 6054)

SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
(212) 574-1200 (telephone)
(212) 480-8421 (facsimile)

Attorneys for Plaintiffs

# TABLE OF CONTENTS

FACTS ........................................................................................................................ 2

ARGUMENT ............................................................................................................. 10

I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ................................. 11

    A.     Defendants Benedict and Brown Have Brazenly Breached the Terms of
    Their Restrictive Covenants ........................................................................... 11

        1.     The Restrictive Covenants Are Necessary to Protect Vie Luxe's
        Trade Secrets and Confidential Information and Customer
        Goodwill .................................................................................................. 12

        2.     The Restrictive Covenants Are Reasonable in Time and Scope, and
        Not Unduly Burdensome on Benedict and Brown ................................. 15

    B.     Benedict and Brown Have Breached Their Fiduciary Duties to Plaintiffs .......... 16

    C.     Defendants Have and Continue to Tortiously Interfere With The
    Company's Current and Prospective Business Relations. ................................... 17

II.    ABSENT INJUNCTIVE RELIEF, PLAINTIFFS WILL SUFFER
    IRREPARABLE HARM THAT CANNOT BE CURED BY MONEY
    DAMAGES ............................................................................................................ 18

III.   THE BALANCE OF THE EQUITIES LIES IN PLAINTIFF'S FAVOR ...................... 19

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Am. Bldg. Maint. Co. of New York v. Acme Prop. Servs., Inc.,
515 F. Supp. 2d 298 (N.D.N.Y. 2007) ...................................................................17

B.U.S.A. Corp. v. Ecogloves, Inc.,
No. 05 Civ. 9988, 2006 U.S. Dist. Lexis 85988 (S.D.N.Y. Jan. 31, 2006) ...........13

Cardiocall, Inc. v. Serling,
492 F. Supp. 2d 139 (E.D.N.Y. 2007) ...................................................................16

FMC Corp. v. Taiwan Tainan Giant Indus. Co., Ltd.,
730 F.2d 61 (2d Cir. 1984)....................................................................................19

Estee Lauder Cos., Inc. v. Batra,
430 F. Supp. 2d 158 (S.D.N.Y. 2006) ..............................................................18, 19

Iannucci v. The Segal Co.,
No. 06 Civ. 4720, 2006 U.S. Dist. Lexis 43339 (S.D.N.Y. Jun. 26, 2006) ...........10, 13, 15, 19

Johnson Controls, Inc. v. A.P.T. Critical Systems,
323 F. Supp. 2d 525 (S.D.N.Y. 2004)....................................................................18

N. Atl. Instruments, Inc. v. Haber,
188 F.3d 38 (2d Cir. 1999).........................................................................13, 14, 19

Natsource LLC v. Paribello,
151 F. Supp. 2d 465 (S.D.N.Y. 2001)................................................................14, 15

Payment Alliance Int'l, Inc. v. Ferriera,
530 F. Supp. 2d 477 (S.D.N.Y. 2007)....................................................................15

Paz Sys., Inc. v. The Dakota Group Corp.,
514 F. Supp. 2d 402 (E.D.N.Y. 2007) ...................................................................16

Register.com, Inc. v. Verio Inc.,
356 F.3d 393 (2d Cir. 2004).............................................................................10, 11

Shred-It USA, Inc. v. Mobile Data Shred, Inc.,
202 F. Supp. 2d 228 (S.D.N.Y. 2002)....................................................................17

Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.,
118 F.3d 955 (2d Cir. 1997)...................................................................................13

Ticor Title Ins. Co. v. Cohen,
173 F.3d 63 (2d Cir. 1999)......................................................................12, 15, 18, 19

**STATE CASES**

BDO Seidman v. Hirshberg,
   93 N.Y.2d 382 (N.Y. 1999) ...........................................................................12, 15

First Empire Secs. v. Miele,
   No. 20247-2007, 2007 N.Y. Slip Op. 51884U (N.Y. Sup. Ct. Aug. 10, 2007) ......................13

Greystone Staffing, Inc. v. Goehringer,
   No. 13906-06, 2006 N.Y. Slip Op. 52458U (N.Y. Sup. Ct. Nov. 27, 2006) ...........................19

Maltby v. Harlow Meyer Savage, Inc.,
   166 Misc. 2d 481 (N.Y. Sup. Ct. 1995) .............................................................14

MTV Networks v. Fox Kids Worldwide, Inc.,
   No. 605580/97, 1998 N.Y. Misc. Lexis 701 (N.Y. Sup. Ct. May 13, 1998) ...........................14

**FEDERAL RULES AND STATUTES**

18 U.S.C. § 1030(a)(5)(B)(iii) ...........................................................................12

Fed. R. Civ. P. 12(b)(1) ....................................................................................11

Fed. R. Civ. P. 12(b)(6) ....................................................................................11

Fed. R. Civ. P. 15(a) ........................................................................................11

**STATE STATUTES**

N.Y. L.L.C. Law § 409 ...................................................................................16

N.Y. L.L.C. Law § 414 ...................................................................................16

iii

On May 30, 2008, Plaintiffs Vie Luxe International LLC ("Vie Luxe" or the "Company") and Marjorie Gubelmann Raein (together, the "Plaintiffs") commenced this Action, alleging claims of violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq. ("CFAA") breach of contract, tortious interference with current and prospective business relations, replevin, conversion, breach of fiduciary duty, and seeking declaratory and injunctive relief, and damages, in connection with Daniel Benedict's ("Benedict's") cessation of membership in Vie Luxe.

Plaintiffs have now verified that, in flagrant contravention of his agreements and obligations, Benedict has (i) destroyed Company client information stored on the Company's laptop computer as verified by Kroll Ontrack, Inc., a forensic computing firm (see Affidavit of Christopher Andrews, sworn to June 18, 2008 ("Andrews Aff.")) in clear violation of the CFAA; (ii) refused to return Company property, including client files; (iii) illegally solicited the business of many Company clients using the proprietary information he learned while at the Company; (iv) caused at least one Company client to cancel an order they had placed with the Company; and (v) enlisted the Company's only other salesperson – Michele Brown ("Brown") to launch a competing business, Daniel Benedict Design, Inc. ("DBD, Inc.").

On June 23, 2008, Plaintiffs filed the First Amended Complaint, adding Brown and DBD, Inc., as defendants. Plaintiffs also now seek a temporary restraining order pending a hearing on preliminary injunction to stop Benedict's and Brown's breaches of their restrictive covenant agreements, and Defendants' wrongful solicitation of and interference with Vie Luxe's client relationships using Vie Luxe information. Defendants' illegal conduct has placed Vie Luxe in financial peril, threatens its invaluable client relationships, and poses the precise type of imminent, irreparable harm that makes preliminary relief appropriate in this case.

## FACTS[1]

Vie Luxe is a luxury home fragrance company, formed in or about March 2004 by Plaintiff Marjorie Gubelmann.  See Gubelmann Aff. ¶¶ 2, 7.  Vie Luxe's major products are its premium scented candles, which are sold in high-end department stores and boutiques under the Vie Luxe brand name.  Id. ¶ 13.  Vie Luxe also develops and manufactures scented candles on behalf of various high-end, brand name retailers ("Private Label Clients").  Id.

**Plaintiffs' Clients, Trade Secrets and Proprietary and Confidential Information**

Vie Luxe clients range in size from large, first class department stores, including Bergdorf Goodman and Saks Fifth Avenue, to small boutiques.  Vie Luxe candles are sold in brick and mortar stores all over the globe, including in Europe and Asia, and are available over the internet through various online retailers, including Amazon.com.  Id. ¶ 14.  Vie Luxe candles and other accessories have a unique design, scent, and packaging which are exclusive and proprietary to Plaintiffs.  Id. ¶ 15.  The Vie Luxe brand is known and marketed to the public based on its superior quality, design and fragrance.  See id.  Products that Vie Luxe develops for its Private Label Clients reflect those client's specific requirements regarding the finished product, including color, scent, packaging, and presentation.  The only way a competitor would be privy to these preferences and requirements would be to work with that particular client on that particular project.  See id. ¶ 18.

Vie Luxe has established its business by cultivating its relationships with department stores, boutiques, and Private Label Clients and providing a superior product. Because Vie Luxe has established a favorable business relationship with its clients, it can count

---

[1]    The Facts are more fully set forth in the Affidavit of Marjorie Gubelmann Raein, sworn to the 19th day of June 2008 ("Gubelmann Aff.") and the Affidavit of Julie Bedard, sworn to the 19th day of June 2008 ("Bedard Aff.") and are repeated here solely to advance the argument.

on repeat business from them, even though it cannot anticipate the size and quality of a client's next order. Id. ¶ 17.

Benedict's job duties included designing and developing Vie Luxe and Private Label products. Id. ¶ 22. Benedict was also tasked with marketing the Vie Luxe brand. Accordingly, he appeared at trade shows across the globe, networked with department stores and boutiques and online retailers, and the Private Label Clients. Id. ¶ 20. Benedict was assisted in this by the Company's only other salesperson, Brown.

**Benedict Joins Vie Luxe**

Initially, Ms. Gubelmann was the sole member of the Company. Id. ¶ 7. In or about May 2004, Ms. Gubelmann agreed to grant to Benedict a minority membership interest in the business and generous compensation, in exchange for his exclusive services in managing the operations of Vie Luxe. Id. ¶ 7-9. While Gubelmann committed $150,000 to launch the business, Benedict invested no capital in the business. Id. ¶ 8. Ms. Gubelmann and Benedict entered into the Amended and Restated Operating Agreement of Vie Luxe International, LLC (the "First Operating Agreement") and a Membership Interest Acquisition Agreement (the "Membership Agreement"), both dated May 1, 2004. A copy of the Membership Agreement is attached to the Gubelmann Aff. as Exhibit A.

Recognizing that Vie Luxe's business would hinge on its client relationships, and developing and promoting its product lines, the Company required both Benedict and Brown, its salesperson, to enter into certain covenants restricting their use of the Company's confidential information and prohibiting them from soliciting Company clients and employees for a period of time during and after their affiliation with Vie Luxe. Benedict and Brown agreed, *inter alia*, as follows:

"Non-Solicitation.   During the period [Benedict/Brown] is performing services to the Company and for a period of 18 months following the termination of [Benedict's/Brown's] services for the Company for any reason (the "Restricted Period"), [Benedict/Brown] alleges that [Benedict/Brown] will not, directly or indirectly, for [Benedict's/Brown's] benefit or for the benefit of any other person, firm or entity, do any of the following:

(a) solicit the employment or services of, or hire or engage, or assist anyone else to hire or engage, any person who was known to be employed by or was a known [employee] to the Company or independent contractor to the Company upon the termination of [Benedict's/Brown's] services to the Company, or within twelve months prior; or

(b) cause or attempt to cause any customer that [Benedict/Brown] serviced or learned of while in the employ of the Company ("Customer"), or any potential customer of the Company which has been the subject of a known written or oral offer or proposal by the Company, or of substantial preparation of such a proposal or offer, within twelve months prior to his termination ("Potential Customer"), licensor, supplier or vendor of the Company to reduce or sever its affiliation with the Company;

(c) perform any work or service for, any Customer or Potential Customer, which business, work or services is similar or related to the business of the Company; or

(d) otherwise interfere with the business or accounts of the Company.

For purposes hereof, "solicitation" shall include directly or indirectly initiating any contact or communication of any kind whatsoever for purposes of inviting, encouraging or requesting such Customer, Potential Customer, [employee] or consultant to materially alter its business relationship, or engage in business, with [Benedict/Brown] or any person, firm or entity other than the Company."

See Membership Agreement, Section 3.04 (Gubelmann Aff. Ex. A); Executive

Confidentiality Agreement dated July 20, 2004 ("Confidentiality Agreement"), Section 1.04

(Gubelmann Aff. Ex. B).

Benedict and Brown both also agreed to maintain the confidentiality of Vie

Luxe's confidential and proprietary information and trade secrets, and acknowledged that any

work product they created during their employment at Vie Luxe would remain Vie Luxe

property. See Membership Agreement, Sections 3.02, 3.03 (Gubelmann Aff. Ex. A);

Confidentiality Agreement, Section 1.02, 1.03 (Gubelmann Aff. Ex. B).

These protections are of paramount importance to the Company. Gubelmann Aff.
¶ 10. Benedict and Brown each explicitly acknowledged that the restrictions were reasonable
and necessary to protect the Company's business and would not interfere with their ability to
earn a living in the industry, and that, in the event they breached these provisions, the Company
would be irreparably harmed, and would have the right to obtain injunctive relief without posting
a bond. See Membership Agreement, Section 3.05 (Gubelmann Aff. Ex. A); Confidentiality
Agreement, Section 1.05 (Gubelmann Aff. Ex. B).

**Benedict Fails to Perform His Duties**

While Vie Luxe gross sales grew during its first two years, and the brand acquired
worldwide recognition, the Company lost money each year and, by 2006, was in need of another
infusion of operating capital to remain afloat. Based on Benedict's urging and insistence that he
would run the Company profitably, Ms. Gubelmann ultimately agreed to contribute additional
operating capital to the Company. Id. ¶ 27. Benedict again did not contribute any operating
capital, rather, his membership interest and compensation were adjusted. Id. ¶ 28. The parties
recorded their agreement in the Second Amended and Restated Operating Agreement of Vie
Luxe International, LLC dated June 9, 2006 (the "Second Operating Agreement"), a copy of
which is attached to the Gubelmann Aff. as Exhibit C.

In the Second Operating Agreement, Benedict and Plaintiffs specifically agreed
and reaffirmed that Benedict

> shall devote substantially all his business time and energies to the
> following aspects of the Company's business: (i) Product development
> and design; (ii) Production and fulfillment management; (iii) Sales, with a
> specific focus on department store sales; (iv) Public relations and
> marketing; (v) Management of the Company's participation in, and set up,

5

of trade shows; and (vi) In-store training in marketing and sale of Company products.

See Second Operating Agreement at Section 7(a) (Gubelmann Aff. Ex. C.).

Because of his problems managing the Company's business to date, the areas outlined in Section 7(a) were intended to better define for Benedict the areas on which he needed focus, and to emphasize their importance. Id. ¶ 30. Accordingly, under the Second Operating Agreement, if Benedict failed to adequately perform his production and fulfillment management duties, the Company, through Ms. Gubelmann, could terminate his services and membership for "Cause" under Section 12 of the Second Operating Agreement. Id.

**Benedict's Termination for Cause Due to His Unabated, Gross Mismanagement**

At the end of 2006, and continuing through the beginning of 2008, Benedict was told repeatedly both verbally and in writing that his continued failure to perform the inventory and production management components of his duties were causing the Company to lose money. See id.; see also Bedard Aff. ¶¶ 10, 11, 13, 14, 16. Ultimately, in March 2008, Ms. Gubelmann determined that Benedict failed to adequately perform his production and fulfillment management duties, and that his membership and services would be terminated for Cause. See Gubelmann Aff. ¶ 35.

On March 26, 2008, the Company gave Benedict notice of his termination for Cause from the Company (the "Termination Notice") for his failure to adequately perform the production and fulfillment management portion of his duties, with a fifteen (15) day period to cure, in accordance with Section 12 of the Second Operating Agreement. See Gubelmann Aff. ¶ 36; Bedard Aff. ¶ 21. Defendant failed to cure. Gubelmann Aff. ¶ 37; Bedard Aff. ¶ 22. On April 10, 2008, Vie Luxe terminated Defendant's services and membership for Cause. Id. Vie Luxe demanded the return of Company property from Defendant, and reminded him of his

6

obligations under the Membership Agreement. Id. Within two weeks of Benedict's termination, Brown, Vie Luxe's only salesperson, resigned from the Company. Gubelmann Aff. ¶ 42.

**Defendant Has Solicited Vie Luxe Clients In Violation of His Restrictive Covenants, And Has Stolen And Destroyed Proprietary Information**

Benedict failed to return any Vie Luxe property for nineteen days following his termination for Cause. See Gubelmann Aff. ¶ 38. When he finally did, it consisted of only the laptop computer the Company provided him for his business use (the "Laptop"), a slim file folder of inventory projections, and a set of keys. See Declaration of Julia C. Spivack dated June 23, 2008, ¶ 4; Gubelmann Aff. ¶ 38. Prior to Benedict's termination, he maintained a desk full of paper documents relating to the Company's accounts. Following his termination, his desk was found to be empty, and the files missing. The missing information contains key information relating to the status of ongoing client relationships, and is critical to the ongoing functions of the business. See Gubelmann Aff. ¶ 41.

Since his termination for Cause, the Company has confirmed that Benedict has – with Brown's aid and assistance – violated his express covenants not to solicit clients and interfere with Vie Luxe business, and his continuing obligations to maintain the confidentiality of Vie Luxe trade secrets and proprietary information, and that Benedict wrongfully accessed and destroyed proprietary Company client information. Specifically:

- The Company has now verified that on April 4, 2008, following notice of his termination for Cause, and while he remained a member of the Company, Benedict improperly accessed and deleted from the Laptop designs and other client information relating to the W Hotels, the St. Regis, and Carolina Herrera, three of the Company's current Private Label Clients. See Andrews Aff. ¶ 7; Gubelmann Aff. ¶ 13. Benedict had been paid to develop this information to service the Company's clients. See Gubelmann Aff. ¶ 39.

- Prior to Benedict's termination from the Company, the Company discovered that Benedict had failed to follow up with the W Hotels on an order it had placed with Vie Luxe, and that the client was unhappy. The Company spent time smoothing over the client relationship to remedy Benedict's neglect of this account. Id. ¶ 43. On April 15, 2008, *five days after* his termination, Benedict communicated with the W Hotels, regarding an order it had placed with Vie Luxe – the very order Benedict had neglected prior to his termination. On April 16, 2008, the Company notified Benedict that it had discovered his improper communication, and ordered him to cease and desist all contact with Vie Luxe clients. See id. ¶ 45.

- When the W Hotels placed a $26,752.50 order with Vie Luxe on or about May 27, 2008, the Company expected that the relationship was remedied and would continue. See id. ¶ 48. The next day, the W Hotels abruptly cancelled the order. When the Company asked why, the W Hotels did not give an explanation. Id. On or about June 5, 2008, Vie Luxe discovered that Benedict had contacted Vie Luxe's scent supplier and placed an order for a Vie Luxe scent – using the Vie Luxe inventory code – that Vie Luxe uses in its candles for the W Hotels. See id. ¶ 49. On June 13, 2008, the Company discovered that Benedict had contacted Vie Luxe's candle glass supplier and placed an order for candle glass. Accordingly, the Company confirmed that the reason it lost the W Hotels order was because Benedict stole it from the Company using Vie Luxe confidential information. Id. ¶ 55.

- On or about May 5, 2008 Benedict communicated with Calvin Klein, another Private Label Client, regarding placing a new candle order with Benedict. Id. ¶ 46. On June 17,

2008, Vie Luxe's scent supplier shipped to Vie Luxe's candle manufacturer – *on Benedict's behalf* – a scent Vie Luxe uses in its Calvin Klein candles. See id. ¶ 50

- On or about April 16, 2006 – less than a week after his termination for Cause – the Metropolitan Opera contacted Benedict at his Vie Luxe email address to try to schedule a meeting with him. Benedict met with the Metropolitan Opera in connection with placing an order for candles with Benedict on or about May 9, 2008. Given that the Metropolitan Opera had emailed Benedict's Vie Luxe email account less than a week following his termination for Cause, the Metropolitan Opera is a "Potential Customer" of Vie Luxe as defined in the Membership Agreement. Id. ¶ 47.

- Benedict incorporated a new business called "Daniel Benedict Design, Inc." on or about April 21, 2008 – less than two weeks after his termination for Cause. See id. ¶ 51.

- Prior to her last day of work on April 25, 2008, Brown emailed various Vie Luxe clients informing them that she and Benedict had left the Company, providing the clients with her personal email address and saying that she would be in touch. Brown also delivered a copy of these emails – which contained the client contact information – to her personal email address, either by forwarding a copy of the email or by simultaneously sending a carbon copy to herself. Id. ¶ 52. Following her resignation, Brown joined Daniel Benedict Design, Inc. Id. ¶ 53.

It is thus apparent that Defendants are intent on pilfering and indeed are targeting Vie Luxe clients, including Private Label Clients, using the Company's proprietary client and product information and trade secrets. Moreover, Benedict's destruction of Vie Luxe computer files containing client information – including designs – is indicative of his intent to deprive the Company of the benefit of its hard-won goodwill. The Company already was in a tenuous

financial state prior to Benedict's termination due to his mismanagement of Company affairs.  It cannot withstand an illegal assault on its business by Defendants using its own confidential and proprietary information and customer goodwill.

Based on the information it has learned since the Complaint was filed on May 30, 2008, Plaintiffs have filed the First Amended Complaint and now seek a temporary restraining order pending a hearing on a preliminary injunction to stop Benedict's and Brown's willful breach of their respective restrictive covenants and Defendants' wrongful use of the Company's trade secrets and confidential and proprietary client information to compete unfairly with the Company, which, if unremedied, will put the Company's existence in peril.

## ARGUMENT

### PLAINTIFFS ARE ENTITLED TO TEMPORARY INJUNCTIVE RELIEF BECAUSE BENEDICT AND BROWN HAVE INDISPUTABLY VIOLATED THEIR RESTRICTIVE COVENANTS, AND VIE LUXE'S SURVIVAL IS AT STAKE.

"A court's determination whether the grant of a temporary restraining order is proper is the same as that used in determining the propriety of issuing a preliminary injunction." See Iannucci v. The Segal Company, No. 06 Civ. 4720, 2006 U.S. Dist. Lexis 43339, at *9 (S.D.N.Y. Jun. 26, 2006) (internal citations omitted).  "In order to obtain a preliminary injunctive relief, a party must demonstrate: (1) that it is subject to irreparable harm; and (2) either (a) that it will likely succeed on the merits or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that a balancing of the hardships tips decidedly in favor of the moving party." Register.com, Inc. v. Verio Inc., 356 F.3d 393, 424 (2d Cir. 2004) (internal quotations omitted).

Plaintiffs meet this standard.  Benedict's and Brown's breach of their enforceable restrictive covenants and continuing fiduciary duties are quickly eroding the Company's business, causing it to lose clients and customer goodwill.  Moreover, Defendants' use and

10

destruction of Vie Luxe trade secrets and confidential and proprietary information to compete

with Vie Luxe has and will continue to damage the Company's viability in a way that money

damages simply cannot remedy.  Indeed, if Defendants are not thwarted, Vie Luxe may be forced

to cease operations imminently due to cash flow shortages.

## I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

As set forth fully below, Plaintiffs are likely to succeed on the merits of the claims

against Defendants and, at the very least, present sufficiently serious questions going to the

merits to make them a fair ground for litigation.  See Register.com, 356 F.3d at 424.

### A.     Defendants Benedict and Brown Have Brazenly Breached the Terms of Their Restrictive Covenants.

Vie Luxe has concrete evidence that Benedict, immediately after his termination

for Cause, and with Brown's help, has and is planning to continue to solicit the business of Vie

Luxe's Private Label Clients as he pursues establishing his own competing business, DBD, Inc.

Benedict has met with the Private Label Clients and induced such clients to place orders for

candles with DBD, Inc. instead of the Company.   He has even arranged for one of Vie Luxe's

scent suppliers to provide Defendants with Vie Luxe's unique scents.  These are blatant

violations of Defendants' Benedict and Brown's covenants not to "cause or attempt to cause any

[Customer or Potential Customer] . . . to reduce or sever its affiliation with the Company,"

"perform any work or service for, any Customer or Potential Customer, which business, work or

services is similar or related to the business of the Company;" and "otherwise interfere with the

business or accounts of the Company."  See Membership Agreement, Section 3.04;

Confidentiality Agreement, Section 1.05.

To launch his new business, Benedict improperly accessed and destroyed

information on the Laptop as verified by Kroll Ontrack, a forensics specialist.  He specifically

destroyed design information and customer information, all in clear violation of the Computer Fraud and Abuse Act.  See 18 U.S.C. § 1030(a)(5)(B)(iii); see also Andrews Aff. ¶ 7.  This is most certainly not a case of an employee deleting a few emails and then being charged under the statute; rather, Benedict deleted trade secrets and customer information and is now seeking to profit from it.[2]

## 1.    The Restrictive Covenants Are Necessary to Protect Vie Luxe's Trade Secrets and Confidential Information and Customer Goodwill.

New York courts will enforce restrictive covenants, like the non-solicitation covenants at issue here, "(1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique."  Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 70 (2d Cir. 1999).  Defendants are soliciting Vie Luxe clients and using Vie Luxe's trade secrets and proprietary and confidential information to steal business away from the Company.

An employer's confidential information and its relationships with its clients and goodwill are legitimate business interests which courts will protect by enforcing restrictive covenants.  See, e.g., BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 392 (N.Y. 1999) ("The employer has a legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which has been created and maintained at the

---

[2]    On June 18, 2008, Defendant Daniel Benedict moved pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the Complaint on the grounds that the Court lacks subject matter jurisdiction over Plaintiffs' claim under the CFAA and Plaintiffs fail to state a claim under the CFAA and therefore, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining claims.  Benedict's arguments are rendered moot by the allegations contained in Plaintiffs' First Amended Complaint, see Pls. First Am. Compl. ¶¶ 51-75, which Plaintiffs submit, as they are permitted to do, as a matter of course pursuant to Fed. R. Civ. P. 15(a).  The factual allegations contained in the First Amended Complaint are substantiated by the affidavits submitted in support of the instant Motion.

employer's expense, to the employer's competitive detriment.") (internal quotations omitted).

Courts routinely enforce restrictive covenants to prevent an employee from "capitalizing on his

acquaintance with his former employer's customers or the favor he found with them when a

valid restrictive covenant concerning the non-solicitation of customers exists." First Empire

Secs. v. Miele, No. 20247-2007, 2007 N.Y. Slip Op. 51884U, at *6 (N.Y. Sup. Ct. Aug. 10,

2007) (enjoining institutional salesperson from soliciting clients).  This is especially so when the

employee had "unfettered access" to all of the employer's confidential information, coupled with

a showing that current clients of the employer have terminated their relationships with the

employer.  See, e.g., Iannucci, 2006 U.S. Dist. Lexis 43339 at *20.

      "A trade secret is any formula, pattern, device or compilation of information

which is used in one's business, and which gives the owner an opportunity to obtain an

advantage over competitors who do not know or use it." B.U.S.A. Corp. v. Ecogloves, Inc., No.

05 Civ. 9988, 2006 U.S. Dist. Lexis 85988, at *5-6 (S.D.N.Y. Jan. 31, 2006) (internal quotations

omitted) (quoting Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 968

(2d Cir. 1997)).  To determine whether information constitutes a trade secret, courts will evaluate

numerous factors, including "(1) the extent to which the information is known outside of the

business; (2) the extent to which it is known by employees and others involved in the business;

(3) the extent of measures taken by the business to guard the secrecy of the information; (4) the

value of the information to the business and its competitors; (5) the amount of effort or money

expended by the business in developing the information; (6) the ease or difficulty with which the

information could be properly acquired or duplicated by others." N. Atl. Instruments, Inc. v.

Haber, 188 F.3d 38, 44 (2d Cir. 1999) (internal quotations omitted).  Vie Luxe's client contact

information, candle formulations and packaging designs are confidential and proprietary.  The

Company took various steps to protect that information from disclosure to the public including requiring Benedict and Brown to enter into confidentiality agreements to maintain the secrecy of the Company's information. Because Private Label Clients represent elite luxury brands, it is difficult to gain access to the right contact person unless there is a prior relationship. Ms. Gubelmann provided that access. See Gubelmann Aff. ¶¶ 16, 20. Competitors, like Defendants, would have a difficult time doing the same on their own – unless they had access to the Company's wealth of information and know-how in the business. Where, as here, a customer list was developed based on the individual customer preferences and specialized knowledge of customer needs, courts will find trade secret protection. See, e.g., N. Atl. Instruments, 188 F.3d at 46 (citing cases). Further, even though the final Vie Luxe products are ultimately released into the public, "until strategic plans and budgeting, etc., are implemented or released into the public, they are trade secrets." MTV Networks v. Fox Kids Worldwide, Inc., No. 605580/97, 1998 N.Y. Misc. Lexis 701, at *25 (N.Y. Sup. Ct. May 13, 1998). Defendants' knowledge of Vie Luxe's customers' plans and preferences are Vie Luxe's trade secrets, and warrant protection.

Courts have found that employees who develop and maintain unique relationships with the Company's clients, at the Company's expense, provide the type of "unique services" that will sustain enforcement of a restrictive covenant. See, e.g., Natsource LLC v. Paribello, 151 F. Supp. 2d 465, 472-74 (S.D.N.Y. 2001) ("the Court recognizes the special relationship between Paribello and his clients, ones cultivated, at least in part, by the resources Natsource provided, as the "unique services" provided by Paribello necessary to enforce a restrictive covenant."); Maltby v. Harlow Meyer Savage, Inc., 166 Misc. 2d 481, 486-87 (N.Y. Sup. Ct. 1995) (unique relationship existed between brokers and their clients, developed in part at the employer's expense, supported enforcing restrictive covenant and granting preliminary

injunction). All of Vie Luxe's client relationships, including the Private Label Clients, were developed during Benedict's and Brown's association with the Company, on the Company's time and at the Company's expense, and should be protected.

**2.     The Restrictive Covenants Are Reasonable in Time and Scope, and Not Unduly Burdensome on Benedict and Brown.**

Courts will enforce restrictive covenants to the extent they are reasonably limited in time and geographic scope. Ticor Title Ins. Co., 173 F.3d at 70. Courts have found reasonable restrictions of eighteen months or longer. See, e.g., Payment Alliance Int'l, Inc. v. Ferriera, 530 F. Supp. 2d 477, 485 (S.D.N.Y. 2007) (granting preliminary injunction, finding two year non-compete enforceable); Iannucci, 2006 U.S. Dist. Lexis 433339, at *20 ("restrictive covenants lasting for three years or longer after an employee's termination have been enforced by New York courts."); BDO Seidman, 93 N.Y.2d at 393 (enforcing eighteen month covenant). Moreover, courts will evaluate the geographic scope of a restrictive covenant within the context of the employer's business. Where, as here, an employer's customers are geographically diverse, and where its business may be conducted over the phone or internet, "a geographic restriction on the covenants would render them nullities." Natsource, 151 F. Supp. 2d at 471 (enforcing restrictive covenants without geographic scope).

Moreover, the restrictions are not unduly burdensome on Benedict and Brown. They are simply prohibited from soliciting or doing business with the Company's clients, or interfering with the Company's business relations. Indeed, Benedict and Brown even acknowledged that these restrictions were not unduly burdensome or restricted their ability to earn a living. See Membership Agreement at Section 3.05(b), Confidentiality Agreement, Section 1.05(b). Accordingly, the restrictions in the Membership Agreement and Confidentiality Agreement should be enforced fully against Benedict and Brown.

**B.      Benedict and Brown Have Breached Their Fiduciary Duties to Plaintiffs.**

As an employee and a member of the Company, Benedict at all times had a fiduciary duty to act in the Company's best interests. This includes a duty not to usurp the Company's business opportunities or to compete with the Company using its confidential information. See Paz Sys., Inc. v. The Dakota Group Corp., 514 F. Supp. 2d 402, 410 (E.D.N.Y. 2007) ("Under New York law, an employee has a common law duty of good faith and fair dealing to the employer not to exploit confidential information for the benefit of himself and others."). See also N.Y. L.L.C. Law § 409 ("a manager shall perform his or her duties as a manager . . . in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.").[3] Brown, too, had a duty of loyalty to the Company throughout her employment. Even if there were no express limitation on Benedict's or Brown's ability to compete or solicit clients, they have a continuing fiduciary obligation to maintain the secrecy of Vie Luxe's confidential and proprietary information even after their affiliation with the Company ends, and to refrain from using such information to compete against Vie Luxe. See, e.g., Cardiocall, Inc. v. Serling, 492 F. Supp. 2d 139, 149-150 (E.D.N.Y. 2007).

---

[3]      While the Company is seeking in the Action a declaratory judgment that Benedict's membership ended for Cause on April 10, 2008, to the extent that Benedict continues to maintain that he is a member of the Company, he is in flagrant breach of his fiduciary obligations because he is pilfering the Company's customers and has misappropriated for his own competitive use its confidential information. In addition, it should be noted that, even assuming Benedict's membership was not properly terminated for Cause – which it was – the Company, through Ms. Gubelmann, could have terminated Defendant's membership at any time without Cause under the New York L.L.C. Law. See N.Y. L.L.C. Law § 414 ("Except as provided in the operating agreement, any or all managers of a limited liability company may be removed or replaced with or without cause by a vote of a majority in interest of the members entitled to vote thereon."). Accordingly, any argument that Defendant continues to remain a member is groundless.

**C.    Defendants Have and Continue to Tortiously Interfere With The Company's Current and Prospective Business Relations.**

A claim of tortious interference with contractual relations consists of the following elements: "(1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third-party's breach of contract without justification; (4) actual breach of the contract; and (5) damages to the plaintiff." <u>Am. Bldg. Maint. Co. of New York v. Acme Prop. Servs., Inc.</u>, 515 F. Supp. 2d 298, 314 (N.D.N.Y. 2007).  To prevail on a claim of tortious interference with prospective business relations, a plaintiff must "demonstrate that the defendant interfered with business relations existing between a plaintiff and a third party, either with the purpose of harming the plaintiff or by means that are dishonest, unfair, or improper." <u>Shred-It USA, Inc. v. Mobile Data Shred, Inc.</u>, 202 F. Supp. 2d 228, 236 (S.D.N.Y. 2002) (internal quotations omitted).

The instant case presents a classic example of a tortious interference claim because (1) Benedict and Brown knew of and indeed worked to build the Company's business relationship with the W Hotels and other Private Label and commercial clients, (2) Benedict misappropriated information relating to the W Hotels and other Private Label Clients and also deleted proprietary client information from the Company's computers in violation of his duties under the Membership Agreement and New York law, and in violation of the CFAA; (3) the Company lost business from the W Hotels, which cancelled its order, and (4) Benedict induced at least two Vie Luxe clients – W Hotels and Calvin Klein – to place an order with Defendants that otherwise would have been placed with the Company. <u>See</u> Gubelmann Aff. ¶¶ 45, 46, 48, 49, 50, 55.  Moreover, all evidence points to Defendants' targeted, continued solicitation of Vie Luxe business using the Company's proprietary information, formulations, designs, and client information. <u>See</u> <u>id.</u>

## II.    ABSENT INJUNCTIVE RELIEF, PLAINTIFFS WILL SUFFER IRREPARABLE HARM THAT CANNOT BE CURED BY MONEY DAMAGES.

"In order to demonstrate irreparable injury the movant must show an injury that is neither remote nor speculative, but actual and imminent and cannot be remedied by an award of monetary damages." Estee Lauder Cos., Inc. v. Batra, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) (internal quotations omitted). Vie Luxe already has lost client orders, and Defendants appear intent on causing Vie Luxe to lose more, all by usurping the Company's proprietary information, formulations, designs, and client information and goodwill, without which the Company cannot grow or continue as a going concern.

Courts routinely find that loss of customer goodwill is an irreparable harm because "[i]t would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." Ticor Title Ins. Co., 173 F.3d. at 69; see also Johnson Controls, Inc. v. A.P.T. Critical Systems, 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004) (stating that ". . . loss of client relationships and customer good will built up over the years constitutes irreparable harm", and finding injunctive relief appropriate where former employee was luring a number of long-term clients away from former employer). Vie Luxe has established its business by building favorable business relationship with its clients, cultivating its customer goodwill and providing a superior product. See Gubelmann Aff. ¶17. The loss of these client relationships would be devastating to the business and may ultimately cause the Company's collapse. Indeed, the Company has come to rely on the unique, up front cash infusion provided by Private Label Client orders to maintain its ability to meet other production needs. See id. ¶ 19. Moreover, Benedict has hired away the Company's only other salesperson, Brown, in breach of his no hire restriction. The loss of Vie Luxe's entire salesforce poses a potentially debilitating blow.

18

Like the loss of client goodwill, "it is clear that the loss of trade secrets cannot be measured in money damages . . . [a] trade secret once lost is, of course, lost forever." FMC Corp. v. Taiwan Tainan Giant Indus. Co., Ltd., 730 F. 2d 61, 63 (2d Cir. 1984) (injunctive relief should be granted against former employee who was, and planned to continue soliciting new clients using proprietary information learned while employed by plaintiff). See also N. Atl. Instruments, 188 F. 3d at 469 (finding that irreparable harm would occur if former employee was allowed to solicit employer's customers). Courts will often presume irreparable harm where a trade secret has been misappropriated. See Estee Lauder Cos., Inc., 430 F. Supp. 2d at 174. The Vie Luxe product designs, unique fragrance formulations, and information relating to client preferences, communications and contact information are all its proprietary information, the loss of which has compromised the Company's ability to service its clients.

Furthermore, as is the case here, "[a] movant's demonstration of irreparable harm is strengthened significantly where the employee has previously acknowledged . . . that his or her own breach of a restrictive covenant entitled the employer to injunctive relief because of the irreparable injury the movant would incur." Iannucci, 2006 U.S. Dist. Lexis at * 11. See also Ticor Title Ins. Co., 173 F.3d at 69 (contract provision stating that plaintiff was entitled to injunctive relief in the event of defendant breach of non-compete supported finding of irreparable harm).

III.    THE BALANCE OF THE EQUITIES LIES IN PLAINTIFF'S FAVOR.

"A party seeking an injunction must also show that the burden caused to the defendant by the imposition of the injunction is less than the harm caused to the plaintiff by the defendant's activities without the injunction sought." Greystone Staffing, Inc. v. Goehringer, No. 13906-06, 2006 N.Y. Slip Op. 52458U, at *5 (N.Y. Sup. Ct. Nov. 27, 2006). Here, the potential damage to Vie Luxe's business is imminent and substantial, where, by contrast,

19

Defendants have deliberately breached the terms of their contractual commitment to the Company and their ongoing fiduciary duties. Should the Plaintiffs' request for an injunction be denied, Defendants would be permitted to continue to solicit Vie Luxe clients and unfairly compete by using the Company's confidential and proprietary business information. Plaintiffs would in fact be irreparably harmed if Defendants are permitted to continue pirating Vie Luxe's business and damaging its goodwill. On the other hand, enforcement of the restrictions will only prevent Defendants from illegally soliciting the Company's clients and interfering in its business relationships and will not prevent them from earning a living. Thus, Vie Luxe's need to protect its legitimate business interests outweighs any potential concern Defendants may have regarding a possible loss of livelihood, and injunctive relief should be granted.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court (1) issue a temporary restraining order pending a hearing on preliminary injunction (a) restraining Defendants from soliciting Vie Luxe customers and using Vie Luxe confidential and proprietary information, and (b) ordering the return of all Vie Luxe property in Defendants' possession, custody or control; and (2) awarding such other relief as the Court deems just and proper.

New York, New York
June 23, 2008

Respectfully submitted,

SEWARD & KISSEL LLP

By: _____

Mark J. Hyland (MH 5872)
Anne C. Patin (AP 6155)
Julia C. Spivack (JS 6054)
One Battery Park Plaza
New York, New York 10004
(212) 574-1200

Attorneys for Plaintiffs Vie Luxe International, LLC and Marjorie Gubelmann Raein