UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X
VIE LUXE INTERNATIONAL, LLC AND MARJORIE  :
GUBELMANN RAEIN,                          :
                                          :  08 Civ. 5023 (LAP)(GWG)
                      Plaintiffs,         :
                                          :
        v.                                :
                                          :
DANIEL BENEDICT, DANIEL BENEDICT DESIGN, INC., :
AND MICHELE BROWN                         :
                                          :
                      Defendants.         :
-------------------------------------------------------------------------- X

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION
FOR A PRELIMINARY INJUNCTION**

Mark J. Hyland (MH 5872)
Anne C. Patin (AP 6155)
Je Jun Moon (JM 9341)
Julia C. Spivack (JS 6054)

SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
(212) 574-1200 (telephone)
(212) 480-8421 (facsimile)

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

1. Defendants Ignore The Plain Language Of The Agreements, Which Forbids Them From Servicing The Company's Clients For 18 Months ........................................ 2

2. Benedict's Claim That He Is Released From All Obligations Under The Agreements Because Vie Luxe Breached Its Obligations Is Specious .............................. 5

3. Defendants Provide No Legal Authority To Support Their Spurious Arguments............. 6

CONCLUSION............................................................................................................................. 10

## TABLE OF AUTHORITIES

**FEDERAL CASES**

B.U.S.A. Corp. v. Ecogloves, Inc.,
   No. 05 Civ. 9988, 2006 U.S. Dist. LEXIS 85988 (S.D.N.Y. Jan. 31, 2006) .................8

Johnson Controls, Inc. v. APT Critical System Inc.,
   323 F. Supp. 2d 525 (S.D.N.Y. 2004) ............................................................... 6, 7, 8

N. Atl. Instruments, Inc. v. Haber,
   188 F.3d 38 (2d Cir. 1999) .................................................................................. 8, 9

Natsource LLC v. Paribello,
   151 F. Supp. 2d 465 (S.D.N.Y. 2001) ..................................................................6, 7

Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc,
   118 F.3d 955 (2d Cir. 1997) .....................................................................................8

Ticor Title Ins. Co. v. Cohen,
   173 F.3d 63 (2d Cir. 1999) ............................................................................ 6, 7, 8, 9

**STATE CASES**

BDO Seidman v. Hirshberg,
   93 N.Y.2d 382 (N.Y. 1999) ...................................................................................6, 7

First Empire Secs v. Miele,
   No. 20247-2007, 2007 N.Y.  (N.Y. Sup. Ct. Aug. 10, 2007) ......................................7

Maltby v. Harlow Meyer Savage, Inc.,
   166 Misc. 2d 481 (N.Y. Sup. Ct. 1995) ..................................................................6, 7

MTV Networks v. Fox Kids Worldwide, Inc.,
   No. 605580-97, 1998 N.Y. Misc. LEXIS 701 (N.Y. Sup. Ct. May 13, 1998) ..............8

**LOCAL RULES**

S.D.N.Y. L.R. 7.1(a) ........................................................................................................1

Plaintiffs Vie Luxe International LLC ("Vie Luxe" or the "Company") and Marjorie Gubelmann Raein (together, the "Plaintiffs") submit this memorandum of law in further support of their motion seeking an order granting a preliminary injunction against Defendants Daniel Benedict ("Benedict"), Daniel Benedict Design, Inc. ("DBD") and Michele Brown ("Brown") (collectively, "Defendants"), restraining them from further violating their restrictive covenants with the Company.

## PRELIMINARY STATEMENT

In opposition to Plaintiffs' motion, Defendants have submitted the Affidavit of Daniel Benedict dated July 1, 2008 ("Benedict Affidavit" or "Benedict Aff.") and the Affidavit of Michele Brown dated July 1, 2008 ("Brown Affidavit" or "Brown Aff."). Defendants have failed to submit a supporting memorandum of law as required under this Court's Local Rules. S.D.N.Y. L.R. 7.1(a). Defendants rely solely on the self-serving arguments advanced in their affidavits, ignore governing law and -- as the Court has noted – ignore the "small matter of the contract[s]" between the parties. TRO Hr'g Tr. 19:19-20, June 24, 2008.

Aside from misstatements of fact and arguments unsupported by any legal authority, Defendants do make capital admissions, among them:

- The W Hotels and Calvin Klein are Vie Luxe Private Label Clients that Benedict developed and serviced while employed by Vie Luxe (see Benedict Aff. ¶ 76);

- Benedict has provided and intends to provide services to Vie Luxe's Private Label Clients in clear violation of his restrictive covenants (id. ¶¶ 8, 75-80);

- After learning that he was being terminated for cause, and during the cure period, Benedict intentionally accessed a Vie Luxe laptop and deleted confidential and proprietary Vie Luxe information therefrom, despite knowing he was unauthorized to do so (id. ¶¶ 61, 63-67);

- Benedict's proffered excuse for deleting confidential Vie Luxe files merely underscores his misconduct (id. ¶¶ 64-67);

- Benedict knowingly hired Brown in violation of the plain language of his restrictive covenants with the Company (id. ¶ 4); and

- Benedict carefully states that he has not "used" or is not "utilizing" Vie Luxe proprietary information but notably does not deny that Defendants have or maintained such information in their possession (id. ¶¶ 69, 81).

## ARGUMENT

**1. Defendants Ignore The Plain Language Of The Agreements, Which Forbids Them From Servicing The Company's Clients For 18 Months**

Under the Membership Agreement[1] and the Confidentiality Agreement, Benedict and Brown agreed that during their association with and for a period of 18 months following their termination from Vie Luxe, they would not, inter alia:

(a) solicit the employment or services of, or hire or engage . . . any person who . . . was a known [employee] to the Company . . . upon the termination of [Benedict's/Brown's] services to the Company; or

(b) cause or attempt to cause any customer that [Benedict/Brown] serviced or learned of while in the employ of the Company ("Customer"), or any potential customer of the Company . . . to reduce or sever its affiliation with the Company;

(c) perform any work or service for, any Customer or Potential Customer, which business, work or services is similar or related to the business of the Company; or

(d) otherwise interfere with the business or accounts of the Company.

See Gubelmann Aff., Ex. A, § 3.04; id., Ex. B, § 1.04 (emphasis added). Benedict and Brown also are obligated to maintain the confidentiality of Vie Luxe's confidential and proprietary information and trade secrets, and acknowledged that any work product they created while

---

[1] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in Plaintiffs' Memorandum of Law in Support of the Motion for a Temporary Restraining Order dated June 23, 2008.

2

employed at Vie Luxe would remain the Company's property.[2]  See id., Ex. A, §§ 3.02, 3.03; id., Ex. B, §§ 1.02, 1.03.

Further, Benedict was responsible for, inter alia, "[p]roduction and fulfillment management." Id., Ex. C, § 7(a)(ii).  If he failed to adequately perform such duties, Vie Luxe could terminate his services and membership for "Cause." Id., § 12.  The Company did so on April 10, 2008, following repeated written and verbal warnings issued to him in 2006 and 2007 and a 15-day cure period that commenced on March 26, 2008.

In his Affidavit, Benedict concedes willful breaches of his obligations under the restrictive covenants, as follows:

- Benedict provided "unique services" to Vie Luxe as he was responsible for "all product design, resourcing, packaging and development . . . all of the inventory issues, bookkeeping, product development, public relations, and marketing for all of Vie Luxe" (Benedict Aff. ¶ 31) and he (along with Brown) developed Vie Luxe's "business relations and networks" (id. ¶ 35; see Brown Aff. ¶ 27);

- W Hotels and Calvin Klein are Vie Luxe Private Label Clients that he developed and serviced while employed by Vie Luxe (Benedict Aff. ¶ 76);

- Following notice of his termination, Benedict willfully, and with full knowledge that he was no longer authorized to do so, deleted proprietary Company information therefrom (id. ¶¶ 61, 63-67).  In fact, he improperly and without authorization, accessed the Company laptop well after he was terminated for cause on April 10, 2008 (see Am. Compl. ¶¶ 59-60);

- He hired Brown immediately after she had (1) resigned and (2) taken proprietary and confidential client information with her (see Benedict Aff. ¶¶ 70-74); and

---

[2]  Benedict and Brown make the spurious assertion (raised for the first time in their affidavits) that they were "not permitted a chance to have counsel review" their respective agreements with Vie Luxe prior to signing them.  Brown Aff. ¶ 47; Benedict Aff. ¶ 30.  These unsupportable statements are not credible and will be challenged at the July 23 Hearing.

3

- He has provided and intends to provide work and/or services to Vie Luxe's Private Label Clients, namely, W Hotels and Calvin Klein, that are similar or related to Vie Luxe's business (id. ¶¶ 8, 75-80).

Defendants concede that they simply disregarded their obligations and: (1) used proprietary and confidential Vie Luxe client information to solicit or attempt to solicit the Company's clients (after which one of Vie Luxe's Private Label Clients cancelled an existing order with the Company (see Gubelmann Aff. ¶¶ 45, 48)); (2) provided or attempted to provide the same services offered by Vie Luxe to at least two of its Private Label Clients; (3) worked together to exploit such information and the customer goodwill they attained while employed by the Company for their own gain; and (4) Benedict intentionally accessed and destroyed Company computer files containing proprietary client and product information and trade secrets (including designs) that he was unauthorized even to access at the time.

Defendants (and Benedict in particular) engaged in this wrongful conduct despite knowing the full scope of their obligations under the restrictive covenants. For example, Benedict makes much ado about his assertion that he technically did "not solicit[] any Vie Luxe customers" (Benedict Aff. ¶ 75), emphasizing that W Hotels and Calvin Klein (two such customers) "contacted [him] directly" to place orders with him (id. ¶¶ 77, 78). Benedict argues that he was free to perform work for these Vie Luxe clients because he was "not bound by a non-compete clause" (id. ¶ 77) and they "had solicited [him]" (id.). This superficial argument is of no moment as it is refuted by the plain language of his restrictive covenant, which precludes him from "perform[ing] any work or service for, any Customer or Potential Customer, which business, work or services is <u>similar or related to</u> the business of the Company." Gubelmann Aff., Ex. A, §§ 3.04(c), (d) (emphasis added). Defendants simply pretend these restrictions do not exist.

4

**2.    Benedict's Claim That He Is Released From All
Obligations Under The Agreements Because
Vie Luxe Breached Its Obligations Is Specious**

Benedict makes contradictory statements regarding his clearly delineated management duties.  On the one hand, he acknowledges being responsible for "all of the inventory issues, bookkeeping, [and] product development" for Vie Luxe (Benedict Aff. ¶ 31), while on the other hand, attributing blame for its inventory problems to (1) a third-party vendor (id. ¶¶ 40-44), (2) Vie Luxe's bookkeeper (id. ¶ 46) and (3) an individual who did not even work for Vie Luxe (id. ¶¶ 38, 43).  Benedict's lack of accountability is underscored by the e-mail correspondence he submits as Exhibit A to his affidavit, which shows he was aware well in advance of his termination that his mismanagement of the inventory had caused cash flow problems for Vie Luxe rendering it unprofitable year after year.[3]  Id., Ex. C at 2-3.  Benedict's claimed unawareness of the inventory problems and his mismanagement of Vie Luxe stands in stark contrast to Benedict's self-styled description as the "successful manager that gave birth and rise to . . . Vie Luxe."  Benedict Aff. ¶ 86.

Benedict asserts that Vie Luxe could not terminate his employment because it owes him a $22,500 salary increase, plus an unspecified (and unsubstantiated) $5,000 in additional expenses.  See id. ¶ 60.  Benedict is wrong.  He is not entitled to, much less owed, any amount approaching $14,885 in outstanding compensation because he failed to meet "all four [of the performance] goals" upon which the salary increase was expressly conditioned.  See Reply Affidavit of Marjorie Gubelmann Raein dated July 8, 2008 ("Gubelmann Reply Aff.") ¶¶ 4-5; Gubelmann Aff., Ex. C, §§ 7(d)(ii), 12.  Benedict failed to meet these performance goals and he was notified of his failure to do so far in advance of his termination.  See Gubelmann Reply Aff.

---

[3]    Vie Luxe suffered net losses every year since its inception.  See Am. Compl. ¶¶ 26, 39.

5

¶ 4; id. Ex. A.  Although Benedict chooses simply to ignore those conditions in his affidavit, he was not the "successful . . . manager" he claims to be (Benedict Aff. ¶ 86) and Vie Luxe does not owe him any additional compensation.

Even assuming Benedict was entitled to additional compensation of $22,500, and he was not, that amount is not a lump sum payment and must be pro rated for the period up until he was terminated (on April 10, 2008).  See Gubelmann Reply Aff. ¶ 5.  The pro rated amount of the $22,500 salary increase falls far short of the $14,885 threshold that would preclude his termination for cause.  And as to Benedict's $10,000 loan to Vie Luxe, that amount on its face has no bearing on the calculation of the $14,885 amount because it is unrelated to compensation.

**3.    Defendants Provide No Legal Authority
        To Support Their Spurious Arguments**

Given their failure to submit a memorandum of law to support their opposition as required under Local Civil Rule 7.1(a) of this Court, Defendants' arguments are based solely on their self-serving statements in the affidavits.

Under New York law, an employer has a legitimate interest in protecting client relationships developed by an employee at the employer's expense.  BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 392 (N.Y. 1999); Johnson Controls, Inc. v. APT Critical Sys. Inc., 323 F. Supp. 2d 525, 535 (S.D.N.Y. 2004).  As such, courts have found that employees who develop unique relationships with the employer's clients, at the employer's expense, provide "unique services" warranting enforcement of a restrictive covenant.  See, e.g., Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 71-72 (2d Cir. 1999); Natsource LLC v. Paribello, 151 F. Supp. 2d 465, 472-74 (S.D.N.Y. 2001) (same); Maltby v. Harlow Meyer Savage, Inc., 166 Misc. 2d 481, 486-87 (N.Y. Sup. Ct. 1995) (same).

6

Defendants admit they provided special or unique services to Vie Luxe based on their relationships with and servicing of Vie Luxe's clients, including Private Label Clients. See Benedict Aff. ¶¶ 34, 35, 47, 76, 86; Brown Aff. ¶¶ 22, 23, 27, 31, 44, 50. Benedict and Brown were paid by Vie Luxe to develop and maintain client relationships on behalf of the Company. Indeed, Defendants contend that they became "the face of Vie Luxe" (Brown Aff. ¶ 27) and "business relations and networks were expanded by [their] efforts" (Benedict Aff. ¶ 35). The relationships Benedict and Brown forged on Vie Luxe's behalf should be protected. See BDO Seidman, 93 N.Y.2d at 392; Johnson Controls, 323 F. Supp. 2d at 535; Natsource, 151 F. Supp. 2d at 472-74; Maltby, 166 Misc. 2d at 486-87.

Moreover, Benedict has misappropriated proprietary Vie Luxe client information relating to at least two Private Label Clients and concedes that he provided or attempted to provide services similar to Vie Luxe's services to at least those clients -- and he intends to continue to do so with respect to other Vie Luxe clients. See Benedict Aff. ¶¶ 8, 69, 76-80. Benedict's wrongful conduct has resulted in W Hotels cancelling an existing order with Vie Luxe and a further loss of or interference with Vie Luxe's business with Calvin Klein; which violates his restrictive covenants. Gubelmann Aff., Ex. A, §§ 3.04(b), (d). Because Defendants seek to "capitaliz[e] on [their] acquaintance with [Vie Luxe]'s customers or the favor [they] found with them when a valid restrictive covenant concerning the non-solicitation of customers exists," the restrictive covenants here should be enforced. First Empire Secs. v. Miele, No. 20247-2007, 2007 N.Y. Slip Op. 51884U, at *6 (N.Y. Sup. Ct. Aug. 10, 2007). Indeed, an employer has sufficient interest in retaining customers and is entitled to enforce a restrictive covenant where an "employee's relationship with the customers is such that there is a substantial risk that the employee may be able to divert all or part of the business." Ticor, 173 F.3d at 72 (quotations omitted). Absent the issuance of an injunction enjoining Defendants from continuing

7

to exploit the relationships they developed with Vie Luxe's clients (at the Company's time and expense), Vie Luxe will be irreparably harmed by the resulting loss of customer good will.  See id. at 69; Johnson Controls, 323 F. Supp. 2d at 532.

Benedict's claim that neither he nor DBD used "proprietary information while working with past Vie Luxe private label clients" (Benedict Aff. ¶ 69) or "individual clients" (id. ¶ 81) also is without merit because he misconstrues what constitutes a "trade secret."  "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it."  B.U.S.A. Corp. v. Ecogloves, Inc., No. 05 Civ. 9988, 2006 U.S. Dist. Lexis 85988, at *5-6 (S.D.N.Y. Jan. 31, 2006) (internal quotations omitted) (quoting Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 968 (2d Cir. 1997)).

Vie Luxe's client-specific contact information, candle formulations and packaging designs and product requirements were developed based on specific customer preferences and specialized knowledge of the customer requirements -- precisely the type of confidential information for which courts will provide trade secret protection.  See N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 46 (2d Cir. 1999) (citing cases).  This confidential and proprietary information is not readily available to the general public or those within the industry. Benedict and Brown, based on their intimate knowledge of and relationships with the Company's clients -- developed during their employment with Vie Luxe at Vie Luxe's expense -- are uniquely positioned to possess this information.  Contrary to Benedict's claim, "someone who knows how to look for [this information]" cannot simply go to the internet, for example, to deduce exactly what kind of products Vie Luxe provided to the W Hotels unless they had detailed knowledge of what W Hotels desired for a particular order at a particular time and how Vie Luxe had met those requirements.  See MTV Networks v. Fox Kids Worldwide, Inc., No.

605580-97, 1998 N.Y. Misc. LEXIS 701, at *25 (N.Y. Sup. Ct. May 13, 1998) (noting that "strategic plans and budgeting [] are [trade secrets until] implemented or released to the public").

Moreover, Vie Luxe expressly required Benedict and Brown to enter into confidentiality agreements and agree to non-solicitation provisions so this information would not be subject to public disclosure or exploited by competitors -- like Defendants -- to compete unfairly with Vie Luxe.  As such, Vie Luxe's client relationships, including, but not limited to, its customers' plans and preferences, constitute trade secrets and Defendants' intimate knowledge thereof warrants enforcement of the restrictive covenants.  See, e.g., Ticor, 173 F.3d at 70 (recognizing that courts enforce restrictive covenants "(1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique").

Benedict further claims, without any supporting authority, that "the intellectual property of the designs, fragrances, logos, artwork, packaging, etc. all belong to the private label client, not Vie Luxe."  Benedict Aff. ¶ 69.  Benedict is wrong and simply misses the point.  Vie Luxe does not claim to own or seek protection for intellectual property rights to its customers' logos or trademarks.  The products and services that Vie Luxe provides to its Private Label Clients is based on customer-specific preferences and detailed knowledge of customer needs and requirements.  Defendants developed such knowledge and experience through the relationships they formed with the Private Label Clients on behalf Vie Luxe and at Vie Luxe's expense.  This familiarity with and institutional knowledge of the clients' plans and preferences epitomizes the kind of proprietary and confidential information that warrants and garners trade secret protection.  See N. Atl. Instruments, 188 F.3d at 46.  Moreover, Vie Luxe does not have independent agreements with its Private Label Clients that provide those clients with any independent

9

contractual or legal rights (intellectual property or trademark or otherwise) to the products that Vie Luxe sells them.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion and issue a preliminary injunction (1) restraining Defendants from further violating their restrictive covenants with the Company, (2) ordering the return of all Vie Luxe property in Defendants' possession, custody or control and (3) awarding such other relief as the Court deems just and proper.

New York, New York
July 9, 2008

                Respectfully submitted,

                SEWARD & KISSEL LLP

By:   /s/ Mark J. Hyland
       Mark J. Hyland (MH 5872)
       Anne C. Patin (AP 6155)
       Je Jun Moon (JM 9341)
       One Battery Park Plaza
       New York, New York  10004
       (212) 574-1200

*Attorneys for Plaintiffs Vie Luxe International, LLC and Marjorie Gubelmann Raein*

SK 26271 0001 898770